[No. 1137-3.    Division Three.    December 23, 1976.]

*In the Matter of the Adoption of* CHARLES LYNN
KURTH.

GEORGE WILLIAM HIBSCHER, ET AL, *Respondents,* v.
JOHN CHARLES KURTH, *Appellant.*

*Bennett, Carroll & Pickett* and *Michael E. Gillespie,* for appellant (appointed counsel for appeal).

*Critchlow, Williams, Ryals & Schuster* and *Eugene G. Schuster,* for respondents.

MUNSON, J.—John Charles Kurth, the father of Charles Lynn Kurth, appeals from an order finding that his consent was not required for the adoption of his child by the child's maternal grandparents. We affirm.

On July 17, 1972, the appellant came home after work and asked his wife if she would like to go out to one of the smaller lakes in Franklin County for a picnic. They gathered up their 1-year-old boy, the necessary paraphernalia, and went to the lake. While the child was in the playpen, the mother was swimming. The appellant joined his wife

and proceeded to hold her under the water. She came up once, responded: "you're trying to drown me"; he promptly pushed her beneath the water's surface and held her there until she drowned. Previous to this time, the appellant had discussed with a friend the possibility of killing his wife, and subsequent to the homicide, he advised the friend he had in fact killed her. Apparently, there was an insurance policy upon her life which he contemplated using to pay some of the community indebtedness. Although the defendant was charged with murder in the first degree, he entered a plea of guilty to murder in the second degree on December 7, 1972; his minimum sentence was set at 35 years and has since been reduced, leaving him 31 years yet to serve at the time of trial. While confined, the appellant attended college, receiving an associate of arts degree in June 1975, and was a member of the Walla Walla Automobile Association for over a year, serving as its business manager and in other managerial positions.

Shortly after the homicide, by order of the court the child was placed in the custody of his maternal grandparents. One year thereafter, they notified appellant of their intention to adopt his child. An adoption petition was filed and a hearing held to determine whether appellant's consent was necessary. Appellant was neither present nor represented; the court concluded his consent was unnecessary; he appealed. Thereafter, the matter was remanded by agreement of all parties following the filing of *In re Luscier*, 84 Wn.2d 135, 524 P.2d 906 (1974). At the subsequent hearing with the appellant present and represented by counsel, the court again found that his consent was unnecessary.

■ The appellant first challenges the court's conclusion based on RCW 26.32.040 (1), which states in part:

No consent for the adoption of a minor shall be required as follows:

(1) From a parent deprived of civil rights when in a hearing for that purpose, as provided in RCW 26.32.050, the court finds that the circumstances surrounding the loss of said parent's civil rights were of such a nature

that the welfare of the child would be best served by a permanent deprivation of parental rights;

This assignment is controlled by *In re Sego*, 82 Wn.2d 736, 740, 513 P.2d 831 (1973), wherein the court stated:

[C]ourts attempt to protect the rights of both parents and children, giving primary consideration to the welfare of children. It is necessary to consider each case on its own facts. . . . For example, a parent's misconduct, even if criminal in nature, does not automatically support permanent child deprivation. By the same token, imprisonment, alone, does not necessarily justify an order of permanent deprivation. . . . On the other hand, a parent's inability to perform his parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated are all relevant to the issue of parental fitness and child welfare, as are the parent's conduct prior to imprisonment and during the period of incarceration.

(Citations omitted.)

Although there was no expert testimony in the instant case nor evidence of intoxication, it is unchallenged that appellant, with premeditation, did entice his wife to a family outing and then intentionally hold her under water until she was dead. It is conceded the child was 1 year old at the time of the drowning, and there is no expert testimony to support what, if any, effect such an occurrence might have on the child. However, it is evident that in the future the child will learn not only that his father killed his mother, but also that it was done in the hope of obtaining her life insurance proceeds. It is also apparent that at the time of this hearing the appellant's minimum sentence was 31 years. After the grandparents had notified appellant of their intent to adopt his son, he wrote them a letter protesting the adoption and stating: "Furthermore, if such actions are taken, Mr. & Mrs. George Hibscher will be fully liable for any of my further actions."

At the hearing appellant testified that he had possibly contemplated that language to mean acts of violence. In reviewing the record in the context of the above quotation

from *In re Sego, supra*, we find that there was clear, cogent, and convincing evidence to support the trial court's finding that the appellant's consent was not necessary to the adoption. As noted in *In re Adoption of Lybbert*, 75 Wn.2d 671, 674, 453 P.2d 650 (1969):

> The severence of the parental relationship is a highly important decision. However, this court has for many years adhered to the rule that the dominant consideration is the moral, intellectual and material welfare of the child or children, and that the parental relationship itself must be subordinate to these considerations.

*Cf. In re Becker*, 87 Wn.2d 470, 553 P.2d 1339 (1976).

Secondly, the appellant challenges the court's conclusion that a second ground existed for finding his consent was not necessary, *i.e.*, abandonment of the child under circumstances "showing a wilful substantial lack of regard for parental obligations". RCW 26.32.040 (4). This challenge may have some validity, inasmuch as the evidence does not support a finding that the purpose of the homicide was aimed at abandoning appellant's parental responsibility for the child. *In re Adoption of Lybbert, supra.*

Notwithstanding, we concur with the respondents that under all the circumstances surrounding the death of Mrs. Kurth, this appellant forfeited his parental responsibility within the meaning of RCW 26.32.040 (1).

Judgment is affirmed.

McINTURFF, C.J., and GREEN, J., concur.