[No. 49954–3.   En Banc.   March 22, 1984.]

*In the Matter of* JARROD S. PAWLING.

PHILIP E. PAWLING, *Appellant,* v. PENNY JO
GOODWIN, ET AL, *Respondents.*

*Bendich, Stobaugh & Strong* and *David F. Stobaugh,* for appellant (appointed counsel for appeal).

*Chemnick & Moen,* by *Eugene M. Moen,* for respondents.

*Alison Moss* on behalf of American Civil Liberties Union, amicus curiae for appellant.

[As amended by order of the Supreme Court June 8, 1984.]

DOLLIVER, J.—Appellant Philip E. Pawling appeals the judgment which terminated his parental rights under RCW 26.32 with respect to Jarrod S. Pawling, his minor son. Jarrod S. Pawling was born on April 10, 1974. His parents, appellant and respondent Penny J. Goodwin, had a "stormy" marriage. Attempts to reconcile failed and their marriage was dissolved in December 1975. Penny Goodwin was awarded custody of Jarrod.

Appellant was convicted of second degree burglary in 1972 and of rape and trespass in 1977. He has been incarcerated since August 1977 at the Washington State Penitentiary at Walla Walla, serving a maximum sentence of 37 years. His minimum term release date is December 7, 1985.

Prior to his incarceration, appellant visited Jarrod several times. He last visited Jarrod one day in the summer of 1976. Later, Pawling attempted to contact Jarrod by calling his parents and Penny's mother to arrange visits. These attempts were unsuccessful. While Penny Goodwin did not inform appellant where she was living, her phone number was listed in the Seattle directory. Although employed at various jobs prior to his incarceration, appellant paid Penny Goodwin, at most, $300 in support money. Appellant remarried in November 1979.

In February 1980, Penny Goodwin married respondent Michael Goodwin. Jarrod is well integrated into the Goodwin household and calls Michael Goodwin "Dad". He goes by the name of Goodwin. Michael Goodwin treats Jarrod exactly the same as his natural son, Joshua, born to Penny and Michael Goodwin. The Goodwins are Jarrod's psychological parents. Although Jarrod knows Michael Goodwin is not his natural father and that his natural father is alive, he has no memory of appellant.

In January 1981, respondent Penny Goodwin filed a petition to terminate the parent–child relationship of Philip Pawling and Jarrod Pawling under the adoption statute, RCW 26.32. A hearing was held in May 1981. Respondent Michael Goodwin was granted permission to join in the petition so as to comply with RCW 26.32.056.

In its oral opinion, the trial court found

> by the burden of proof which I referred to as clear, cogent and convincing that his [Philip Pawling] criminal convictions in light of the absence of steady parenting again . . . calls for a finding of termination under that statute. If it is also necessary that this court condition termination of parental rights on a judging that such termination is in the best interests of the child, I am not able to make such a finding.

Thereafter, the judge signed an order of continuance for additional testimony on whether an order of abandonment was in the child's best interest. Additional testimony was heard in October 1981.

In November 1981, the trial court terminated Philip Pawling's parent–child relationship with his son Jarrod. The findings of fact state:

> 6. Prior to Philip Pawling's incarceration in August, 1977, he had not abandoned his child Jarrod and did not intend to abandon Jarrod.
> 7. Prior to and during his incarceration, Pawling made several attempts to contact his son Jarrod.
> 8. After and during his incarceration, up to and including the time of trial, Philip Pawling did not subjectively intend to abandon his son Jarrod.
> 9. While he is incarcerated, Philip Pawling can but

minimally express love and affection for his child.

10. While he is incarcerated, it is virtually impossible for Pawling to provide support for his son.

11. By his criminal conduct that has resulted in his incarceration, Pawling has placed himself in a position which is the equivalent of abandoning his child.

The conclusions of law state:

2. By his criminal conduct and resulting incarceration, Philip Pawling has abandoned his son under circumstances showing a wilful, substantial lack of regard for parental obligations.

3. It is in Jarrod's best interest that Philip Pawling be deprived of his parental rights with respect to Jarrod so that the adoption by Michael Goodwin may take place.

A decree of adoption was subsequently entered in favor of the respondent (stepfather) Michael Goodwin, which was stayed pending appeal.

Initially, appellant alleges CR 59 and CR 15 were violated. Appellant claims the oral opinion of the trial court at the May 1981 hearing was a judgment and in ordering additional testimony the trial court was reopening the case after trial. If appellant is correct, the trial court was required under CR 59(f) to enter an order giving the reasons for granting a new trial. CR 59 contemplates the granting of a new trial after the entry of judgment which is defined in CR 54(a)(1) as "the final determination of the rights of the parties in the action" which "shall be in writing and signed by the judge". From its remarks both at the May 1981 and October 1981 hearings, it is apparent the trial court did not view the May 1981 hearing as a final adjudication. Furthermore, no formal written judgment or findings of fact and conclusions of law were signed until after the October hearing.

As to CR 15, its purpose is to enable a case to be litigated on the merits with the real issue before the court. 3 J. Moore, *Federal Practice* ¶ 15.02[1] (2d ed. 1983). The trial court allowed additional evidence to be presented as to the best interests of the child even though this matter had not been raised in the pleadings. Leave to amend pleadings

"shall be freely given when justice so requires", CR 15(a), and the decision of a court to grant a continuance to allow the admission of further evidence will not be disturbed except for a manifest abuse of discretion. *Morgan Bros. v. Haskell Corp.,* 24 Wn. App. 773, 604 P.2d 1294 (1979). No prejudice is shown from the admission of evidence as to the best interests of the child, *see* CR 15(b), and it is doubtful if any could be shown since the best interests of Jarrod would be of paramount concern to appellant as well as to the other parties. We find no violation of either CR 59 or CR 15.

Next, we consider whether appellant had abandoned his son. RCW 26.32.056 provides:

> In the case of a petition filed by a parent and joined by the petitioner's spouse seeking termination with respect to the other parent, and such other parent appears and contests the termination, the *court shall determine whether such parent has deserted or abandoned the child under circumstances showing a wilful substantial lack of regard for parental obligations.* If the court makes such a finding, it shall terminate his rights to the child.

(Italics ours.) *See* RCW 26.32.040(4), *repealed by* Laws of 1979, 1st Ex. Sess., ch. 165, § 23, p. 1575, wherein adoption of a minor without consent was allowed under the same criteria. The Legislature has statutorily "defined abandonment on the part of a parent to have been established when the circumstances show a 'wilful substantial lack of regard for parental obligations'." *In re Adoption of Lybbert,* 75 Wn.2d 671, 674, 453 P.2d 650 (1969). *See In re Miller,* 86 Wn.2d 712, 717, 548 P.2d 542 (1976) (abandonment means the voluntary failure or neglect to care for as well as the failure to support).

Specifically, two decisions of the Court of Appeals have addressed the effect a parent's incarceration has in determining whether there is statutory abandonment. In *In re Adoption of Dobbs,* 12 Wn. App. 676, 679–80, 531 P.2d 303, *review denied,* 85 Wn.2d 1006 (1975), the parties divorced and the mother was awarded custody of their minor chil-

dren. The natural father paid negligible child support and visited the children infrequently. The court found the father had failed in his parental obligations due to his numerous incarcerations in jail or prison for misdemeanor or felony convictions. His incarcerations were deemed "willful and voluntary acts" as "it was his choice as to whether (1) he would fulfill his parental obligations, or (2) commit criminal acts". 12 Wn. App. at 680. The court concluded the father's conduct constituted "in law an abandonment of his children." 12 Wn. App. at 681. *Cf.* former RCW 26.32.040(4).

In *In re Clark*, 26 Wn. App. 832, 611 P.2d 1343, *review denied*, 94 Wn.2d 1018 (1980), the trial court terminated a natural father's parental rights to his 6–year–old daughter. The father was serving a 3– to 20–year prison sentence in Minnesota on two charges of aggravated robbery, with a federal hold on him effective upon release. The Court of Appeals affirmed the trial court and stated: "[c]ontinued criminal activity on the part of the father, resulting in his absence and inability to care for his child, may be the equivalent of his abandonment of her, with his conduct expressing disregard for the child's welfare." 26 Wn. App. at 835. *See also In re Ferguson*, 98 Wn.2d 589, 656 P.2d 503 (1983), *rev'g* 32 Wn. App. 865, 650 P.2d 1118 (1982) (trial court's order terminating father's rights in son affirmed, wherein father was found guilty of taking indecent liberties with his stepdaughter); *In re Darrow*, 32 Wn. App. 803, 649 P.2d 858 (1982) (judgment to terminate parental rights of prisoner convicted of rape and serving 10–year prison term in Arizona upheld); *In re Adoption of Kurth*, 16 Wn. App. 579, 557 P.2d 349 (1976) (grandparents who petitioned for adoption of grandson did not need father's consent, wherein father had murdered his wife by drowning her and was sentenced to a 35–year prison term). *Cf.* Comment, *A Survey of State Law Authorizing Stepparent Adoptions Without the Noncustodial Parent's Consent*, 15 Akron L. Rev. 567 (1982).

 Abandonment is established by "a wilful substan-

tial lack of regard for parental obligations." RCW 26.32.056. Parental obligations entail these minimum attributes:

(1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance.

*In re Adoption of Lybbert, supra* at 674. *See* Unif. Adoption Act § 19(c), 9 U.L.A. 51 (1979). Obviously, incarceration hinders the ability of a parent to fulfill these obligations. *In re Adoption of Dobbs, supra.*

Neither criminal conduct nor imprisonment alone necessarily justifies an order of permanent deprivation. *In re Sego,* 82 Wn.2d 736, 740, 513 P.2d 831 (1973). *See* Annot., 79 A.L.R.3d 417, 427–30, 451–52 (1977); Annot., 78 A.L.R.3d 712, 719–21 (1977); Note, *The Loss of Parental Rights as a Consequence of Conviction and Imprisonment: Unintended Punishment,* 6 New Eng. J. on Prison L. 61 (1979). However, in termination proceedings we do consider

a parent's inability to perform his parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated are all relevant to the issue of parental fitness and child welfare, as [is] the parent's conduct prior to imprisonment and during the period of incarceration.

*In re Sego, supra* at 740.

In *In re Sego,* the juvenile court ordered permanent deprivation of parental rights of a father who received concurrent 25–year sentences on charges of armed robbery and the second degree murder of his wife, the mother of his then 2–year–old daughter and 9–month–old son. Reversing the Court of Appeals (*In re Sego,* 7 Wn. App. 457, 499 P.2d 881 (1972)), we affirmed the trial court. We found evidence of rehabilitation at the penitentiary (being active in Alcoholics Anonymous, attending bible classes, and enrolling in a machinist class) did not overcome the expert testimony that the children's welfare would be best served by imme-

diate permanent deprivation. We ruled that "clear, cogent and convincing evidence" is necessary to sustain an order terminating parental rights, *i.e.*, the ultimate fact in issue must be shown by evidence to be "highly probable". *In re Sego, supra* at 739. *See Santosky v. Kramer,* 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982) (due process requirement met by this standard). On appeal, the findings of fact of the trial court are not to be disturbed if they are supported by "substantial evidence" in light of the "highly probable" test. *In re Sego, supra* at 739.

This court has "recognized that courts undertake a grave responsibility when they deprive parents of the care, custody and control of their natural children." *In re Sego, supra* at 738. More importantly, however, we have

> ruled that a child's welfare is the court's primary consideration. Consequently, when the rights of parents and the welfare of their children are in conflict, the welfare of the minor children must prevail.

*In re Sego, supra* at 738. *See In re Aschauer,* 93 Wn.2d 689, 695, 611 P.2d 1245 (1980); *In re Adoption of Lybbert,* 75 Wn.2d 671, 674, 453 P.2d 650 (1969).

Appellant argues the trial court erred in determining he had abandoned his son within the meaning of RCW 26.32-.056. He asserts there is neither "clear, cogent and convincing" evidence to support the termination nor to find termination is in Jarrod's best interest. Lastly, the appellant argues for a less drastic alternative—making respondent Michael Goodwin the guardian (RCW 11.88) and custodian (RCW 26.09.180) of Jarrod.

Respondents argue the language of RCW 26.32.056 is clear and that the trial court correctly followed its mandate. They assert that to terminate parental rights under RCW 26.32.056 the trial court need only determine whether the parent has "abandoned the child under circumstances showing a wilful substantial lack of regard for parental obligations." Respondents point to the fact that the statute makes no mention of the best interests of the child or less drastic alternatives.

RCW 26.32.056 and case law addressing termination of parental rights should be analyzed conjunctively. While RCW 26.32.056 requires "circumstances showing a wilful substantial lack of regard for parental obligations" to determine abandonment, case law has repeatedly stressed the need to consider the child's best interests. *See generally In re Esgate,* 99 Wn.2d 210, 214, 660 P.2d 758 (1983); *In re Aschauer, supra; In re Becker,* 87 Wn.2d 470, 477–78, 553 P.2d 1339 (1976); *In re Sego, supra* at 738.

Thus, we find the appropriate procedure in proceedings under RCW 26.32 is to consider two questions: (1) jurisdictional—whether the biological parent, by behavior, has forfeited all rights in the child, *i.e.,* whether the child has been deserted or abandoned under RCW 26.32.056; and (2) dispositional—whether terminating parental rights would be in the best interests of the child. V. DeFrancis, *Termination of Parental Rights—Balancing the Equities* 15–16 (1971); Ketcham & Babcock, *Statutory Standards for the Involuntary Termination of Parental Rights,* 29 Rutgers L. Rev. 530, 539 (1976). *See also* Note, 6 New Eng. J. on Prison L., at 70.

In resolving the jurisdictional question, we affirm the trial court and hold appellant did in fact abandon Jarrod "under circumstances showing a wilful substantial lack of regard for parental obligations." The trial court did not rely solely on the fact appellant is incarcerated. *In re Sego, supra* at 740. Rather, all relevant circumstances were evaluated. The fact appellant intended and continued to commit criminal acts, which resulted in incarceration, became the equivalent of abandonment. Moreover, appellant failed to meet parental obligations. He has not expressed "love and affection", "personal concern", or "social and religious guidance" to Jarrod for over 5 years. *In re Adoption of Lybbert, supra* at 674. He has supplied negligible financial support for his son and the prospects of his doing so in the future are questionable. The termination order is sustained by clear, cogent, and convincing evidence.

As to the ruling of the trial court that termination would

be in Jarrod's best interest, although the experts who testified disagreed, it is evident from the testimony that Jarrod's psychological parents are the Goodwins and that he is well integrated into their family. On appeal, we are constrained to place "*very strong* reliance on trial court determinations of what course of action will be in the best interests of the child." *In re Todd,* 68 Wn.2d 587, 591, 414 P.2d 605 (1966). We are not allowed to second guess the trial court—"to weigh either the evidence or the credibility of witnesses even though we may disagree . . ." *In re Sego, supra* at 739–40. There is substantial evidence to affirm the conclusion of the trial court that it is in Jarrod's best interest to be adopted by his stepfather, Michael Goodwin.

Finally, as an alternative to termination, appellant urges that Michael Goodwin be appointed the guardian (RCW 11.88) and custodian (RCW 26.09.180) of Jarrod. On occasion, less drastic alternatives prior to termination are appropriate. *See In re Sumey,* 94 Wn.2d 757, 765, 621 P.2d 108 (1980) (residential placement of minors under former RCW 13.32 can be invoked only if the conflict between parent and child cannot be resolved by less restrictive alternatives). *In re Brooks,* 228 Kan. 541, 551, 618 P.2d 814 (1980). *See In re E.A.,* 638 P.2d 278 (Colo. 1981). There may be other cases where an alternative, short of termination, would be appropriate. This is not one of them. Termination of the parental rights of appellant is, under the circumstances in this case, in the best interests of the child; the alternative proposed by appellant is not.

We affirm the trial court.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.