IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Adoption of | ) | |
| | ) | No. 32371-4-III |
| L.G.S. | ) | |
| | ) | |
| A person under the age | ) | |
| of eighteen | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

KORSMO, J. — The biological father, R.S., challenges the trial court's termination

of his parental rights in order to facilitate the adoption of his daughter, L.G.S., by her

stepfather. The trial court's determinations that R.S. was an unfit father and that it was in

the best interest of the child to terminate the relationship are supported by the record. We

affirm.

FACTS

L.G.S. was born in January 2007; her mother is N.P. R.S. lived with N.P. and his

daughter for the first eight months of her life, but then moved out of the family home and

has not seen the child since that time. R.S. has been incarcerated continuously since

February 2008, except for a nine day period. He currently is serving a federal sentence

and has a potential release date in August 2015. Stepfather B.P. has known L.G.S. since

the child was one and has been married to N.P. since May 28, 2010. He holds L.G.S. out as his daughter and she uses his surname.

R.S. and N.P. entered into a final parenting plan that restricted his residential time due to his "willful abandonment" of the child and his "refusal to perform parental functions." Clerk's Papers (CP) at 28. His monthly support obligation is $150. He has not provided financial support for the child. R.S. has attempted to contact his daughter by sending letters and cards from prison. The child has not been given the letters because she believes B.P. is her father and does not know of the existence of R.S.

B.P. and N.P. petitioned to terminate R.S.' parental rights and allow B.P. to adopt L.G.S. The guardian ad litem (GAL) agreed that the relationship should be terminated because R.S. had not had contact with the child since 2007, had not supported the child, and had not performed any parenting functions. R.S. testified that he loves L.G.S. and could be a good provider and role model for her; however, he also offered to consent to the adoption if paid $21,600—the same figure he would owe in support from that point in time until L.G.S. turned 18. Nonetheless, the trial court granted the petition, concluding that the sporadic efforts at contacting the child did not meet R.S.' parental obligations and that termination was in the best interests of L.G.S. In its memorandum opinion, the trial court noted: "there is no question that [R.S.] has deserted or abandoned" L.G.S. CP at 109.

R.S. then timely appealed to this court.

2

ANALYSIS

R.S. challenges both the unfitness determination and the conclusion that termination was in the child's best interest. We address those issues in the stated order.

*Parental Unfitness*

R.S. contends that the trial court applied the incorrect standard in determining that he was unfit. The record, however, is clear that the court applied the appropriate standard and its references to R.S. abandoning and deserting his child did not evidence a return to the former standard for determining parental unfitness.

The governing statute provides in pertinent part:

> . . . the parent-child relationship of a parent may be terminated upon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.

RCW 26.33.120(1).

Under this statute, the petitioner must prove by clear, cogent and convincing evidence that termination is warranted. *In re Adoption of McGee*, 86 Wn. App. 471, 473, 937 P.2d 622 (1997). The parental fitness determination is a threshold issue that must be resolved by the trial court before the court may consider the best interest of the child. *In re H.J.P.*, 114 Wn.2d 522, 531, 789 P.2d 96 (1990). It is considered a jurisdictional requirement. *Id.*; *In re Pawling*, 101 Wn.2d 392, 400, 679 P.2d 916 (1984).

3

Prior to enactment of the current statute, the legislation used to require a determination by the trial court that the "parent has deserted or abandoned the child under circumstances showing a wilful substantial lack of regard for parental obligations" in order to establish parental unfitness. Former RCW 26.32.056 (1979).[1] Because the memorandum opinion also stated that R.S. had "deserted or abandoned" his child, he contends that the court erroneously applied the incorrect standard to his case.

We disagree. The record shows that the court had the proper standard in mind in reaching its decision. Two paragraphs before the challenged language, the court's memorandum decision summarized the applicable law as applied to the allegations of the case:

> The statute requires the Petitioner to show by clear, cogent and convincing evidence that 1) [L.G.S.] has been deserted or abandoned (showing parental unfitness by Mr. [R.S.] and 2) terminating Mr. [R.S.'] rights would be in the best interest of [L.G.S.].

CP at 109.

This passage illustrates that the trial judge had the current statute in mind while making his decision. The evidence, dating back to the parenting plan, was that R.S. had abandoned his daughter. The trial court's use of that same language to describe R.S.'

---

[1] Repealed by LAWS OF 1984, ch. 155, § 38.

4

behavior did not indicate a return to the former statute. It was an appropriate factual summation of the evidence.

Abandonment and desertion are not inconsequential facts for finding parental unfitness, even if they no longer are the primary basis for doing so. A trial judge does not err in describing a parent's actions in those terms if they fairly state the evidence. Here, they did so. R.S. had left the family home and had no contact with his daughter for some months before becoming incarcerated. He made little effort to contact the child after that point and also made no effort to meet his support obligation. He argued that his incarceration prevented him from being a parent and that N.P. was frustrating his efforts to contact L.G.S. However, the trial found that the contact amounted to nothing more than a single card sent to the child and that R.S.' criminal behavior was something that he could have controlled.

The evidence did allow the trial court to determine that he had abandoned and deserted L.G.S., thus establishing that he had disregarded his parental obligations. The trial court applied the correct standard to determine parental unfitness.

*Best Interests of the Child*

R.S. also argues that the evidence does not support the court's determination that terminating his relationship with L.G.S. was in her best interests. Substantial evidence also supported this determination.

5

As noted previously, the best interests of the child standard must be established by clear, cogent, and convincing evidence. RCW 26.33.120. The court's findings will not be disturbed on appeal if they are supported by "substantial evidence." *In re Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). Because of the high standard of proof, "the evidence must be more substantial than in the ordinary civil case" determined by the preponderance of the evidence standard. *In re Hall*, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983). Whether termination is in the best interest of a child is based on the particular facts and circumstances of each case. *In re Dependency of A.V.D.*, 62 Wn. App. 562, 572, 815 P.2d 277 (1991).

Here, the court entered the following finding in its memorandum decision:

> As to the best interests of [L.G.S.], the evidence is that Mr. [B.P.] has been the father figure to [L.G.S.] since she was less than two years old. They have a father-daughter relationship. [L.G.S.] does not have that relationship with Mr. [R.S.]. If Mr. [R.S.] were to come back into [her] life when she is eight and a half, uprooting her familial relationships, her best interest would clearly not be served. The experienced GAL has opined it would not be in the best interest of [L.G.S.] for the parental relationship with Mr. [R.S.] to continue. This Court agrees.

CP at 110.

This finding is supported by substantial evidence and should not be disturbed. R.S. has had no contact with L.G.S. since she was ten months old. In contrast, B.P. has known L.G.S. for the majority of her life and has developed a father-daughter relationship with her to the extent that she calls him "daddy," uses his surname, and gives

birthday and father's day cards to him. R.S. has not provided care or financial support since L.G.S. was a baby, while B.P. has contributed to her shelter, food, clothing, schooling and extracurricular activities.

The GAL testified that she recommended termination because it was in L.G.S.'s best interest. The GAL observed that L.G.S.' current lifestyle was "like a normal family on a weekend morning." She was playing with her siblings and referring to B.P. as "dad." The GAL concluded that even though R.S. expressed love for L.G.S., it was not in her best interest for him to refuse consent to adoption by B.P. The GAL report indicated that R.S. knew nothing of his daughter's education, health, activities or interests. The GAL was also aware that R.S. has not contributed to the child's life financially, nor had he provided social or religious guidance. He had no part in her life.

This evidence substantially supports the trial court's best interest finding. In contrast with her existing family structure, L.G.S. does not know R.S. and has received the majority of support and parental guidance from N.P. and B.P. Disturbing these ties at the age of eight would be disruptive and not in her best interest.

The evidence amply supported the trial court's determination that it was in the best interests of L.G.S. to end the parent-child relationship with R.S. and permit her adoption by B.P. There was no error.

Affirmed.

7

No. 32371-4-III
*In re the Adoption of L.G.S.*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.

8