# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In re the Detention of:

C.C.,

      Appellant.

No. 51887-2-II

UNPUBLISHED OPINION

SUTTON, J. — CC appeals the superior court's 180-day commitment order. Preliminarily, she argues that this appeal is not moot because, although her 180-day commitment will have ended by the time we review this appeal, prior commitment orders have collateral consequences. We agree that this appeal is not moot. CC also argues that the court lacked jurisdiction to impose a 180-day involuntary commitment order and that substantial evidence does not support the court's findings of fact that CC was gravely disabled and that a less restrictive alternative was not appropriate. We hold that the superior court had jurisdiction to impose the order and that substantial evidence supports the court's findings of fact. Thus, we affirm.

## FACTS

Upon petition by the State, the superior court committed CC to Western State Hospital in July 2017 for competency restoration following the dismissal of felony criminal charges for assault. Upon subsequent petitions by the State, the superior court entered a 14-day involuntary treatment order and a 90-day involuntary treatment order. The State filed another petition for

involuntary treatment up to 180 days alleging that CC was gravely disabled as a result of a mental disorder because she suffered from paranoid schizophrenia.

At the 180-day commitment hearing, Dr. Bryan Hill testified as follows in support of the petition for involuntary treatment. CC suffers from paranoid schizophrenia and she was quite guarded, suspicious, accusatory, and ultra-religious. She punched the air in a ritualistic manner, paced the ward, and isolated herself from others. CC had five incidents that required seclusion or restraint from August 2017 to December 2017.

Dr. Hill also testified that CC's ritualistic behaviors, such as punching the air, and her verbally aggressive and accusatory behavior concerned him. Without the care and structure of Western State Hospital, CC would revert to "destructive schemas" such as being homeless, not taking her prescribed medication, and acting aggressively towards others. Verbatim Report of Proceedings (VRP) at 51-52.

Dr. Hill testified that CC was "somewhat" medication compliant. VRP at 51. However, he was concerned that CC rubbed salt on her skin and had rashes, which caused her to be placed on a salt restriction upon her arrival to the hospital. CC testified that salt was the only thing that controlled yeast on her skin.

Before a less restrictive placement could be considered for CC, Dr. Hill testified that CC would need to have a reduction in her symptoms related to her paranoid schizophrenia, and more volitional and cognitive control so that she would not accuse others of abusing her and would agree to medically accepted treatment.

CC testified that she was "traveling through" Port Angeles and was homeless prior to her admission to Western State Hospital. VRP at 60. Her own plan for discharge was to go to a

No. 51887-2-II

Tacoma shelter called "Nativity House," but she admitted that she had never been to Tacoma before. VRP at 56, 60.

Following the testimony, the court ruled that the State had met its burden of presenting clear, cogent, and convincing evidence of CC's grave disability. The superior court noted that while CC had made progress in treatment, she needed a more definite plan for discharge.

The court granted the petition, entered a 180-day order committing CC for involuntary treatment, and entered the following findings of fact and conclusions of law:

Findings of Fact

The court makes the following findings of fact by clear[,] cogent[,] and convincing evidence:

1. Medication Rights.

   [CC] was advised of the right to refuse medication 24 hours prior to the hearing of this petition and those rights were respected.

2. Reason/s for Commitment. [CC] suffers from a mental disorder. The diagnosis is <u>Paranoid Schizophrenia</u>.

   Is/Continues To Be Gravely Disabled and [CC]:

   [A]s a result of a mental disorder is in danger of serious physical harm resulting from the failure to provide for [her] essential needs of health or safety.

   [A]s a result of a mental disorder manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over actions, is not receiving such care as is essential for health and safety.

   . . . .

3. Less Restrictive Alternative Treatment.

   Less restrictive alternative treatment is not in the best interest of [CC] or others.

3

No. 51887-2-II

Conclusions of Law

1. Jurisdiction. The court has jurisdiction over the parties and subject matter of this mental illness proceeding.

2. Detention Criteria. [CC] as a result of a mental disorder:

. . . .

[I]s/continues to be gravely disabled.

Clerk's Papers (CP) at 51-52 (bold face type omitted). CC appeals.

ANALYSIS

I. SUPERIOR COURT'S JURISDICTION

CC argues[1] that we should vacate the 180-day commitment order because the superior court lacked jurisdiction to enter the order. She claims that the State petitioned for a 180-day order under RCW 71.05.280(4) after dismissing the felony criminal charges under RCW 10.77.086(4), and that under this process, the court only has jurisdiction to enter a 90-day order. The State argues that the process to file directly for a 180-day involuntary commitment order following dismissal

---

[1] CC preliminarily argues that the appeal is not moot despite her order for involuntary commitment having terminated by the time we consider her appeal because prior commitment orders impact decision making on all future commitments. We hold that CC's appeal is not moot because there could be collateral consequences regarding any future commitments.

We have held that collateral consequences necessarily flow from a civil commitment because "a trial court presiding over future involuntary commitment hearings may consider . . . prior involuntary commitment orders when making its commitment determination." *In re Det. of M.K.,* 168 Wn. App. 621, 629, 279 P.3d 897 (2012). "[E]ach commitment order has a collateral consequence in subsequent petitions and hearings," and an appeal therefore should be heard on the merits. *M.K.,* 168 Wn. App. at 626.

Because the issue of CC's commitment will likely have collateral consequences for her should there be future questions regarding her mental health, we determine that the appeal is not moot. Thus, the appeal is not moot and we consider the merits of the appeal.

of felony charges did not occur here because the petition was filed and withdrawn before it could be heard. The State argues that the 180-day petition was refiled under RCW 71.05.320(4)(d), which grants the court jurisdiction to enter a 180-day order, and thus, her jurisdiction claim fails. We agree with the State and hold that the superior court had jurisdiction to enter a 180-day involuntary commitment order.

Under RCW 71.05.280(4), the State may file a petition for involuntary commitment for up to 90 days of additional treatment when the individual is alleged to be gravely disabled. After making appropriate findings that the individual is gravely disabled, the court may grant the petition under RCW 71.05.320(1).[2] At the expiration of the 90 day period, the individual shall be released unless "the superintendent or professional person in charge of the facility in which he or she is confined . . . files a new petition for involuntary treatment." RCW 71.05.320(4)(d). Upon petition, if the court determines that the individual continues to be gravely disabled as a result of a mental disorder, and that less restrictive alternatives are not in the individual's or others best interests, it may order additional involuntary commitment for treatment for up to 180 days. RCW 71.05.320(6)(a).

As discussed above, under RCW 71.05.320(6), we hold that the court had jurisdiction to enter a 180-day involuntary commitment order following a 90-day involuntary commitment order. Thus, we hold that the superior court's 180-day commitment order was procedurally proper, and CC's jurisdiction claim fails.

---

[2] The legislature amended RCW 71.05.320 in 2018. Laws of 2018, ch. 201 § 3012. Because these amendments are not relevant here, we cite to the current version of this statute.

## II. GRAVELY DISABLED

CC argues that substantial evidence does not support the superior court's finding that she was gravely disabled as a result of a mental disorder under RCW 71.05.020(22). We hold that substantial evidence supports the superior court's finding that CC was gravely disabled.

We review a superior court's finding that an individual is gravely disabled to determine if the finding is supported by "substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing." *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986); *see M.K.,* 168 Wn. App. at 629-30. When the State must prove its case by clear, cogent, and convincing evidence, the ultimate fact at issue must be shown by evidence to be "'highly probable.'" *LaBelle*, 107 Wn.2d at 209 (quoting *Pawling v. Goodwin*, 101 Wn.2d 392, 399, 679 P.2d 916 (1984)).

Under RCW 71.05.320(4)(d), an individual who is currently involuntarily committed for up to 90 days can be recommitted at the end of his or her commitment period if the individual continues to be gravely disabled. "Gravely disabled" is defined as:

> [A] condition in which a person, as a result of a mental disorder . . . : (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

RCW 71.05.020(22).[3] RCW 71.05.020(22)(a) and (b) set forth two alternative definitions of gravely disabled, either of which provides a basis for involuntary commitment. *LaBelle*, 107

---

[3] The legislature amended RCW 71.05.020 in 2018. Laws of 2018, ch. 305 § 1. Because these amendments are not relevant here, we cite to the current version of this statute.

Wn.2d at 202. In this case, substantial evidence supports the superior court's finding that CC is gravely disabled under both definitions.

A. RCW 71.05.020(22)(a)

CC argues that substantial evidence does not support the superior court's finding that she was gravely disabled under RCW 71.05.020(22)(a). We disagree.

"[E]ssential human needs of health or safety" under RCW 71.05.020(22)(a) include "such essential human needs as food, clothing, shelter, and medical treatment." *LaBelle,* 107 Wn.2d at 205.

Here, CC testified that she had no firm housing plans upon discharge and planned to go to a shelter in Tacoma if released although she admitted she had never been to Tacoma before. CC testified that she would take "outpatient" medications to address her schizophrenia and qualified that statement with "if they have a drop-in center." VRP at 61.

Dr. Hill testified that CC has taken her medications, but had not been fully compliant with taking her medications as prescribed. CC preferred to rub salt on her skin (which gave her rashes) instead of receiving medical treatment. Dr. Hill further testified that CC went through periods of being verbally assaultive and physically assaultive toward objects with "repeated and escalating loss of cognitive or volitional control." VRP at 46. CC had five incidents of seclusion or restraint since August 2017, further demonstrating her loss of volitional control. Dr. Hill testified that because CC was not a long-term Washington State resident and there was little history of her psychiatric treatment available, he could not firmly establish a history of prior psychiatric treatment and hospitalizations except for Supplemental Security Income benefits based on her diagnosis of schizoaffective disorder.

Accordingly, we hold that the superior court could reasonably have found by clear, cogent, and convincing evidence that CC was gravely disabled under RCW 71.05.020(22)(a). Thus, the superior court's finding that CC was gravely disabled is supported by substantial evidence.

B. RCW 71.05.020(22)(b)

CC argues that substantial evidence does not support the superior court's finding that as a result of her mental disorder, she manifests severe deterioration in routine functioning and is not receiving such care as is essential for her health and safety. We disagree.

To establish grave disability under RCW 71.05.020(22)(b), the evidence "must include recent proof of significant loss of cognitive or volitional control[,] . . . [and] must reveal a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for his or her health and safety." *LaBelle*, 107 Wn.2d at 208.

In addition to the evidence discussed in the prior section, the court considered CC's testimony that she thought she was being abused and Dr. Hill's testimony that CC had a history of verbal aggression in general and physical aggression toward objects.

In the declaration in support of the 180-day commitment petition, Dr. Hill explained that CC had admitted to a forensic evaluator that she had gone off her medications in order "to heal her mental illness herself." CP at 40. Further, CC's spotty medication compliance in the hospital gave little assurance to Dr. Hill that CC would continue taking her medications in the community. Dr. Hill further testified that without firm discharge plans, a less restrictive alternative placement was not in CC's best interests. Dr. Hill was concerned that without treatment, CC would revert back to her "destructive schemes" of being homeless and aggressive toward others, and would not continue taking her medication. VRP at 51.

No. 51887-2-II

Accordingly, we hold that the superior court could reasonably have found by clear, cogent, and convincing evidence that CC was gravely disabled under RCW 71.05.020(22)(b). Thus, the superior court's finding that CC was gravely disabled is supported by substantial evidence.

CONCLUSION

We hold that the appeal is not moot, the superior court had jurisdiction to enter the 180-day commitment order, and substantial evidence supports the court's findings of fact that CC was gravely disabled as a result of a mental disorder and that a less restrictive alternative was not appropriate. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, C.J.

MELNICK, J.