# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Detention of: | No. 57862-0-II |
| C.F., | UNPUBLISHED OPINION |
| Appellant. | |

CHE, J. — CF appeals the superior court's order committing him to an additional 180 days of commitment at Western State Hospital due to his being gravely disabled as a result of a mental or behavioral health disorder. CF argues that the superior court's written findings of fact and conclusions of law are inadequate to facilitate appellate review and that insufficient evidence supports the superior court's finding that he is gravely disabled. We disagree and affirm.

## FACTS

After the trial court found CF incompetent to stand trial for criminal charges in February 2022, he was committed to Western State Hospital. His commitment was extended an additional 90 days upon a stipulated finding that he was gravely disabled as a result of a mental or behavioral health disorder. In June 2022, CF's commitment was extended another 180 days after a court commissioner found that CF continued to be gravely disabled. In November 2022, doctors at Western State petitioned for up to 180 days of additional commitment based on their assessment that CF continued to be gravely disabled.

At a hearing on the petition before a superior court commissioner, Dr. Elwyn Hulse, a clinical psychologist at Western State, and only witness, testified as to CF's condition. Dr. Hulse

testified that he personally observed, interviewed, and evaluated CF for mental illness, spoke with the Western State treatment team and staff, and reviewed CF's forensic and clinical hospital records and chart notes. Dr. Hulse diagnosed CF with schizophrenia disorder continuous, and cannabis and stimulant use disorders. Dr. Hulse determined that CF's schizophrenia disorder was prolonged, generally both unstable and stable, with no remission of the psychiatric symptoms. He observed that CF exhibits cognitive disorganization including paranoid or grandiose delusions. About two weeks prior, a staff member observed CF respond to internal stimuli meaning CF also exhibited auditory or visual hallucinations during the commitment period. CF made paranoid statements during the evaluation regarding the fear that he would become infected with HIV or Hepatitis-C by someone using his safety razor. CF did not exhibit any visual hallucinations during his interview with Dr. Hulse.

Dr. Hulse observed that CF had minimal insight into his mental health disorder, vacillating between denying having any mental health disorder and suggesting "maybe I am [mentally ill]." Clerk's Papers (CP) at 88. During the interview, and supported by chart notes, CF tended to be very impulsive with no long-term planning. Dr. Hulse assessed CF's cognitive control to be minimal, noting that CF admits to racing thoughts and mood swings. Staff noted CF being demanding and impulsive to get his needs met. Dr. Hulse also assessed CF's volitional control to be limited as he is "very in the moment with his impulses." CP at 90.

CF participates in his treatment groups and consistently takes his medications, but fails to make rational decisions regarding treatment and tends to be very impulsive with no long-term planning. Dr. Hulse noted that CF is experienced living on the streets in Seattle and could find food, water, and clothes but that CF would be inconsistent in maintaining his treatments for his

mental disorder in the community. He noted this is CF's third admission to Western State since 2020. Dr. Hulse recommended CF remain committed until a less restrictive alternative placement could be found for him.

At the conclusion of the hearing, the commissioner ordered CF to be committed for up to 180 days of involuntary treatment on the basis of prong (b) of former RCW 71.05.020(24) (2021), which provides that, as a result of a behavioral health disorder, CF manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his actions and is not receiving such care as is essential for his health or safety. The court commissioner entered written findings summarizing Dr. Hulse's testimony and noting the reason for CF's continued commitment under prong (b) of former RCW 71.05.020(24).

CF filed a motion for revision with the superior court, arguing that the State provided insufficient evidence to support a finding that CF suffers from a behavioral health disorder or continues to be gravely disabled. The superior court corrected scrivener's errors in the commissioner's findings but otherwise denied CF's motion to revise.

CF appeals.

ANALYSIS

I. ADEQUACY OF FINDINGS OF FACT

CF argues that the commissioner's written findings of fact were inadequate to support meaningful appellate review. We disagree.

"We review the superior court's ruling, not the commissioner's decision." *In re Det. of L.K.*, 14 Wn. App. 2d 542, 550, 471 P.3d 975 (2020). Because the superior court denied CF's

motion for revision, the commissioner's decision becomes the decision of the superior court. *Id*. (internal quotations omitted); RCW 2.24.050. Findings of fact are required following an involuntary commitment hearing. MPR (Mental Proceedings Rule) 3.4(b). A superior court's written findings of fact "should at least be sufficient to indicate the factual bases for the ultimate conclusions." *In re Det. of LaBelle*, 107 Wn.2d 196, 218, 728 P.2d 138 (1986). "The purpose of the requirement of findings and conclusions is to insure the [superior court] judge 'has dealt fully and properly with all the issues in the case before . . . decid[ing] it'" and so, on appeal, we "'may be fully informed as to the bases of [the] decision when it is made.'" *Id*. 107 Wn.2d at 218-19 (internal quotation marks omitted) (quoting *State v. Agee*, 89 Wn.2d 416, 421, 573 P.2d 355 (1977)). Where no exceptions to the findings of fact are taken below, we will give them a liberal construction rather than overturn the judgment based thereon. *LaBelle*, 107 Wn.2d at 219. "'Findings may be sufficient even if they are implicit in the trial court's formal written findings of fact.'" *In re Det. of A.F.*, 20 Wn. App. 2d 115, 123, 498 P.3d 1006 (2021).

CF likens this case to *In re Det. of G.D.*, 11 Wn. App. 2d 67, 72-73, 450 P.3d 668 (2019). In *G.D.*, the superior court only made check-the-box findings without additional findings and Division One found the boilerplate findings of fact insufficiently specific under *LaBelle*. *Id*. Here, the court did more than make check-the-box findings. The superior court added detailed summaries of Dr. Hulse's testimony from the hearing to its findings of fact and based on the findings, the court concluded that CF continued to be gravely disabled. The court's findings of fact were sufficiently detailed for our review.

Next, CF contends that "mere recitation of testimony, without assessment of credibility or attempt to tie such testimony to the appropriate legal standard, is inadequate." Br. of Appellant at

21. However, as the State correctly points out, no court has held that summarizing testimony alone is grounds for reversal. Additionally, the only witness who testified during the hearing is Dr. Hulse. It is clear that the court's reliance on Dr. Hulse's testimony implied findings of credibility and reliability by the court. *See A.F.*, 20 Wn. App. 2d at 124.

We hold that the findings of fact are sufficient for appellate review.

## II. SUFFICIENT EVIDENCE

CF also argues that insufficient evidence supported the superior court's finding that he continued to be gravely disabled.[1] We disagree.

An individual may be involuntarily committed for behavioral health treatment if, as a result of a behavioral health disorder, that person is "gravely disabled." *LaBelle*, 107 Wn.2d at 201-02. The State must prove grave disability by clear, cogent, and convincing evidence. RCW 71.05.310; *Morris v. Blaker*, 118 Wn.2d 133, 137, 821 P.2d 482 (1992); *LaBelle*, 107 Wn.2d at 209. Appellate courts review challenges to the sufficiency of the evidence in a light most favorable to the State. *In re Det. of B.M.*, 7 Wn. App. 2d 70, 85, 432 P.3d 459 (2019).

When the standard is clear, cogent, and convincing evidence, "the ultimate fact in issue must be shown by evidence to be 'highly probable.'" *LaBelle*, 107 Wn.2d at 209 (quoting *Pawling v. Goodwin*, 101 Wn.2d 392, 399, 679 P.2d 916 (1984)). "[A]ppellate review is limited to determining whether substantial evidence supports the findings and, if so, whether the findings

---

[1] CF also purports to argue that insufficient evidence supported the court's conclusion that a less restrictive placement is not in his best interest. But he does not provide any further argument or authority to develop that argument and we do not address it. *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wn.2d 654, 692-93, 15 P.3d 115 (2000) (citing former RAP 10.3(a)(5) (1998) and RAP 12.1(a)).

in turn support the trial court's conclusions of law and judgment." *Id*. If substantial evidence

supports the trial court's findings, then appellate courts will not disturb those findings. *Id*.

There are two ways the State may prove that a person is "gravely disabled." *Id*. at 202. Under

former RCW 71.05.020(24), a gravely disabled person is one who:

> as a result of a behavioral health disorder: (a) Is in danger of serious physical harm
> resulting from a failure to provide for his or her essential human needs of health or
> safety; or (b) manifests severe deterioration in routine functioning evidenced by
> repeated and escalating loss of cognitive or volitional control over his or her actions
> and is not receiving such care as is essential for his or her health or safety.

Here, the commissioner found CF gravely disabled under prong (b). To establish "grave

disability" under prong (b) of former RCW 71.05.020(24), the State must produce evidence of

(1) severe deterioration in routine functioning as evidenced by "recent proof of significant loss of

cognitive or volitional control" and (2) "a factual basis for concluding that the individual is not

receiving or would not receive, if released, such care as is essential for his or her health or

safety." *LaBelle*, 107 Wn.2d at 208. "Implicit in the definition of gravely disabled . . . is a

requirement that the individual is unable, because of severe deterioration of mental functioning,

to make a rational decision with respect to his need for treatment." *Id*. (emphasis omitted).

"Prong (b) represents a legislative attempt to permit 'intervention before a mentally ill

person's condition reaches crisis proportions,' as it 'enables the State to provide the kind of

continuous care and treatment that could break the cycle and restore the individual to satisfactory

functioning.'" *In re Det. of A.M.*, 17 Wn. App. 2d 321, 335, 487 P.3d 531 (2021) (quoting

*LaBelle*, 107 Wn.2d at 206).

The *LaBelle* court also explained that the statute incorporated under prong (b), the

definition of "decompensation," meaning the progressive deterioration of routine functioning

supported by evidence of repeated or escalating loss of cognitive or volitional control of actions. 107 Wn.2d at 206. Prong (b) allows the State to involuntarily treat those discharged patients who, "after a period of time in the community, drop out of therapy or stop taking their prescribed medication and exhibit 'rapid deterioration in their ability to function independently.'" *LaBell*e, 107 Wn.2d at 206. Stated another way, prong (b) also allows intervention before a mentally ill person decompensates and provides for continuity of care. *In re Det. of A.F.*, 20 Wn. App. 2d at 127. This definition of gravely disabled is meant to address and prevent "revolving door" syndrome, in which patients often move from the "hospital to dilapidated hotels or residences or even alleys, parks, vacant lots, and abandoned buildings, relapse, and are then rehospitalized, only to begin the cycle over again." *LaBelle*, 107 Wn.2d at 206.

Viewing the evidence in the light most favorable to the State, the superior court's findings were supported by the evidence. *B.M.*, 7 Wn. App. 2d at 85. Relying upon his interview and observation, CF's patient chart notes, and discussion with CF's treatment team, Dr. Hulse diagnosed CF with schizophrenia, continuous—meaning there has been no remission of CF's psychiatric symptoms.

Dr. Hulse observed CF exhibit cognitive disorganization. In this observation period, CF's chart reflected observations of paranoid delusions involving a fear that CF would contract HIV or Hepatitis-C from another patient using CF's razor.

According to Dr. Hulse, CF had minimal cognitive control because CF had minimal ability to control his thoughts. Dr. Hulse described CF as impulsive and demanding, noting that CF exhibited racing thoughts and mood swings. CF got in between staff and another patient to

get his needs met. Dr. Hulse noted that approximately two weeks before testifying, a staff member observed CF responding to internal stimuli.

Dr. Hulse explained that as to CF's volitional control, CF tended to "very impulsive" based on what CF wanted or needed in that moment without thought to long-term planning. CP at 89. Additionally, CF's chart reflected that he had been verbally aggressive during this commitment period.

Lastly, Dr. Hulse opined that CF would be inconsistent in maintaining his treatment for his mental disorder in the community and that CF is incapable of making rational decisions about his treatment. Dr. Hulse noted that this was CF's third admission to Western State Hospital since 2020, implying that CF's inconsistency with treatment in the community puts him at risk for "revolving door" phenomenon.

These facts support the court's finding of recent significant loss of cognitive and volitional control and a severe deterioration in routine functioning. The evidence is also sufficient to support the court's finding that CF would not receive such care as is essential for his health or safety if released.

## CONCLUSION

We hold that the court's findings are supported by substantial evidence, and they support the court's conclusions of law that CF was gravely disabled as a result of a mental disorder under former RCW 71.05.020(22)(b). Because the State met its burden of proof by clear, cogent, and convincing evidence, we affirm the superior court's 180-day involuntary commitment order.

We affirm.

No. 57862-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Lee, J.

Veljacic, A.C.J.

9