# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of: | No. 86324-0-I |
| B.M. | DIVISION ONE |
| | UNPUBLISHED OPINION |

FELDMAN, J. — B.M. appeals his 90-day involuntary psychiatric commitment order, arguing the State failed to show he continued to present a likelihood of serious harm to others. Because the parties are familiar with the facts and this opinion will not be published, we recite the facts only as necessary to explain our reasoning below. Finding no error, we affirm.

Preliminarily, although B.M.'s 90-day involuntary psychiatric commitment ended in 2024, the State expressly notes that it "is not arguing that this appeal is moot" and asks the Court to "decide this case on the merits." Applicable precedent similarly indicates we should entertain this appeal due to the collateral consequences of an involuntary commitment order. *In re Det. of M.K.*, 168 Wn. App. 621, 625-26, 279 P.3d 897 (2012) (recognizing significant role that prior civil commitments play in a subsequent commitment determination). We therefore decline to dismiss the appeal as moot and address the merits of the commitment order and B.M.'s arguments.

Under RCW 71.05.280, a person may be confined for additional treatment after an initial 14-day treatment period if, "Such person was taken into custody as a result of conduct in which he or she attempted or inflicted physical harm upon the person of another . . . and continues to present, as a result of a behavioral health disorder, a likelihood of serious harm." RCW 71.05.280(2). "Likelihood of serious harm" means "[a] substantial risk that . . . physical harm will be inflicted by a person upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm." RCW 71.05.020(37)(a)(ii). The State bears the burden of proving someone requires involuntary commitment by clear, cogent, and convincing evidence, "which means the ultimate fact in issue must be shown by evidence to be 'highly probable.'" *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986) (quoting *In re Interest of Pawling*, 101 Wn.2d 392, 399, 679 P.2d 916 (1984)). "An appellate court reviewing the trial court's decision on involuntary commitment considers whether the trial court's findings of fact are supported by substantial evidence and if the court's findings of fact support the court's conclusions of law and judgment." *In re Det. of A.F.*, 20 Wn. App. 2d 115, 125, 498 P.3d 1006 (2021).

Contrary to B.M.'s assertion, substantial evidence supports the trial court's conclusion that he continued to present a likelihood of serious harm to others. Seattle Police arrested B.M. for assault after he struck several passersby walking in Belltown. He was hospitalized at Harborview Medical Center to be evaluated following the incident, and then transferred from there to Multicare Navos Inpatient Hospital (Navos). Hyemin Song, a licensed clinical social worker and court

evaluator at Navos, testified at the hearing in this matter that B.M. suffers from schizophrenia and his repeated prior assaults are a "result of him being not able to process . . . surroundings," making his behavior "erratic," "unpredictable," and "dangerous."

Song further testified B.M. was not "able to have . . . coherent or meaningful conversations with the treatment team to discuss his treatment plan" nor was he able to discuss the "assaultive behavior that led to this hospitalization." Song explained: B.M. "didn't think that there was anything wrong," believing he had been hospitalized for merely "loitering." Song also testified B.M. did not have outpatient support in place to reduce the likelihood of serious harm to others were he released. Song noted, "I do not think that [there are] enough resources for [B.M.] to maintain stability in the community." This evidence is sufficient to show, as the trial court concluded, that B.M. continued to present a likelihood of serious harm to others as required to detain him for additional treatment after the initial 14-day treatment period.

Notwithstanding the above, B.M. argues the lack of aggressive or threatening behavior while receiving treatment at Navos demonstrates he no longer presented a likelihood of serious harm and, thus, the 90-day involuntary commitment order should be vacated. While there is evidence that B.M. displayed no aggressive behavior while hospitalized, our Supreme Court has recognized "the practical effect of being placed in the hospital will usually eliminate the 'imminence' of one's dangerousness." *In re Det. of Harris*, 98 Wn.2d 276, 284, 654 P.2d 109 (1982). Accordingly, notwithstanding any asserted improvement while

hospitalized, "the State has a continuing interest in confining those who present a substantial risk of serious physical harm to themselves or others." *Id.* Here, as Song testified, while B.M.'s "insight is a little bit improving," his understanding of his assaultive behavior remained "limited and poor at this time." She therefore recommended continued hospitalization. Thus, on this record, the absence of aggressive behavior while hospitalized does not invalidate the trial court's commitment order.

In sum, substantial evidence supports the trial court's findings and conclusion that the State met its burden of showing by "clear, cogent and convincing evidence" that B.M. continued to pose a likelihood of serious harm to others. We affirm.

Feldman, J.

WE CONCUR: