IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of: | ) | No. 80886-9-I |
| | ) | (Consolidated with No. |
| I.R.M. and D.K.H., | ) | 80887-7-I; 80888-5-I) |
| | ) | |
| Minor Children. | ) | DIVISION ONE |
| | ) | |
| | ) | ORDER WITHDRAWING |
| | ) | OPINION, CHANGING |
| | ) | CASE TITLE, AND |
| | ) | SUBSTITUTING OPINION |
| | ) | |

The Supreme Court of Washington granted discretionary review of the opinion filed on February 1, 2021, and on October 6, 2021 remanded the case with instructions to change the case title consistent with In re the Welfare of K.D., 198 Wn.2d 67, 491 P.3d 154 (2021). This court has considered the order and on its own motion a majority of the panel has determined that the mandate should be recalled, the names of the parents should be removed from the opinion, the opinion should be withdrawn, and a substitute opinion filed; now, therefore, it is hereby

ORDERED that the opinion filed on February 1, 2021 is withdrawn; and it is further

ORDERED that the case title shall be changed consistent with K.D.; and it is further

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| In the Matter of the Dependency of: | ) | No. 80886-9-I (Consolidated with |
| | ) | No. 80887-7-I; 80888-5-I) |
| I.R.M., and D.K.H., | ) | |
| | ) | DIVISION ONE |
| Minor Children. | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| | ) | |

HAZELRIGG, J. — Parents appeal the trial court's orders finding their children, I.R.M. and D.K.H., dependent pursuant to RCW 13.34.030(6)(c). They also argue that the court lacked authority to order services that were unrelated to the identified parenting deficiencies. We hold that there was insufficient evidence for the court to find I.R.M. and D.K.H. dependent under RCW 13.34.030(6)(c). We therefore reverse the dependency determination.

FACTS

C.N.M. and D.A.H.[1] reside together in Bellingham with their daughters I.R.M. and D.K.H.[2] C.N.M. is the biological mother of both girls. D.A.H. is the

---

[1] During the pendency of this appeal, the mother filed a motion to correct the case title so that the parents would be identified by their initials. On September 1, 2020, the Court Clerk denied that motion. On October 29, 2020, a panel of judges denied the mother's motion to modify the Court Clerk's September 1, 2020 ruling. The Supreme Court granted discretionary review of the opinion filed on February 1, 2021 and on October 6, 2021 remanded the case with instructions to change the case title consistent with In re the Welfare of K.D., 198 Wn.2d 67, 491 P.3d 154 (2021).

[2] I.R.M.'s biological father entered into an order of dependency prior to trial, and is not a party to this appeal.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

biological father of D.K.H., but parents both children as his own.[3]  At the time of trial, I.R.M. was below the age of 10 and D.K.H. was below the age of six.

On or around April 5, 2019, Bellingham police visited the family's apartment to investigate a bicycle theft.  The father was not there, but the mother let them in.  Both children were present.  Officer Joel Douglas observed clothing and other items "piled high" on the beds and standing water in a bathtub.  The couch and chair appeared to be the only places available to sleep.

On April 25, 2019, Department of Children, Youth, and Families (Department) social worker Jessica Maden visited the family in response to a referral by the apartment complex's assistant manager that alleged inadequate supervision of I.R.M. and D.K.H. and unsanitary home conditions.  The father brought the girls to the door but he would not allow Maden to enter the apartment or look inside.  I.R.M. was smiling and appeared to be in good health.  When Maden visited the residence again with her supervisor on May 9, 2019, both girls appeared clean and healthy, and the residence appeared sanitary from what could be seen in the living room.

During her investigation, staff members at the apartment complex told Maden that the girls were sleeping on the floor with bike parts everywhere and that they were frequently seen running around unsupervised.  Maden also learned that the children were not enrolled in school and that they were not receiving regular medical or dental checkups.

---

[3] On this basis, and because I.R.M.'s biological father is not a party to this appeal, any further references to the "father" in this opinion are to D.A.H. Similarly, any use of "parents" refers to C.N.M. and D.A.H.

Maden repeatedly attempted to offer voluntary services to the parents, but they refused to engage with the Department. Maden then scheduled a family team decision meeting for June 11, 2019, but the parents did not attend. In June 2019, the Department received two additional referrals regarding the family, including an allegation that I.R.M. and D.K.H. had been left in the care of a nine-year old neighbor for an extended period of time.

On June 18, 2019, police returned to the apartment to arrest the father and serve a search warrant for stolen property. The children were not present at that time because they were staying with their grandmother. Police took the father into custody and searched the residence. Douglas testified that it appeared to be in worse condition than it was in April, with more bicycle parts and frames, wet and dirty clothes piled in various areas, and rotting food. Detective Daniel Kelsh testified that there were cigarette butts floating in the bathtub, a large fixed blade knife on the windowsill, a pellet gun propped up by the front door, and a stolen bicycle. Kelsh testified that had the girls been present, he would have taken them into protective custody due to the unsanitary conditions in the home. However, the officers observed no sign of alcohol, illegal drugs, or drug paraphernalia.

On June 24, 2019, the Department developed a protective action plan that allowed the girls' grandmother to care for them on a temporary basis so the mother could focus on getting the father out of jail. However, when the father was released from jail about a week later, the grandmother would not tell either parent where the girls were. On July 1, 2019, the grandmother dropped off the girls at the police station and the family was reunited. Kelsh testified that the girls looked happy to

see their parents. Although the Department asked police to take the children into protective custody, they declined to do so at that time.

On July 5, 2019, the Department filed dependency petitions alleging that I.R.M. and D.K.H. were abused or neglected pursuant to RCW 13.34.030(6)(b) or had no parent, guardian, or custodian capable of adequately caring for then such the circumstances constituted a danger of substantial damage to the their psychological or physical development pursuant to RCW 13.34.030(6)(c). The petitions alleged that the parents allowed unsanitary and unsafe conditions in the home, failed to meet the children's educational and medical needs, failed to adequately supervise them, and were possibly abusing substances. The court issued an order removing the children to shelter care and appointing Megan Eggers as guardian ad litem (GAL).

On September 16, Eggers visited the parents' apartment while the children were in foster care. She testified that the apartment was "reasonably clean," with no dangerous or unsanitary conditions. It was much cleaner and neater than it had been in June. The children's beds were made with clean sheets and blankets, and the clothes were hung up in the closets.

An eight-day dependency trial commenced on October 29, 2019. The court considered 35 exhibits and heard the testimony of 12 witnesses, including both parents. The GAL and Department social workers testified regarding their concerns about living conditions in the residence and the importance of school attendance and regular doctor and dental appointments. I.R.M.'s school principal

testified regarding the importance of school for I.R.M., stating that she had fallen behind academically since being pulled from school.

At the conclusion of the trial, the court rejected the allegation that I.R.M. and D.K.H. were abused or neglected under RCW 13.34.060(6)(b) but found that they had no parent capable of meeting their needs under RCW 13.34.060(c). In its written findings of fact, the court specified that it based this finding on both parents' "failure to provide safe and sanitary housing" and "failure to provide for the medical and scholastic needs of the child[ren]," as well as the father's "ongoing criminality." In its oral ruling, the court stated that it had "struggled with this decision, because [they] [did] not believe that any one factor supports such a finding." The court nevertheless concluded that dependency was appropriate when various factors were viewed as a whole, including criminal activity in the home, the father's frequent incarceration and its impact on the mother's ability to parent, the children's sporadic school attendance, unsanitary conditions in the home, lack of medical and dental care, and the parents' unwillingness to accept professional advice. The court specified that the Department did not prove any parental deficiencies related to substance abuse or lack of supervision.

A disposition hearing immediately followed. Because it found no manifest danger of serious abuse or neglect, the court ordered in-home placement over the Department's objection. The court ordered both parents to undergo random urinalysis testing, substance abuse evaluations, and parenting instruction. The court also ordered the mother to undergo a mental health assessment. The court also ordered the parents to allow announced and unannounced visits to the home

by the Department social worker and the GAL to demonstrate that their home was safe. The written order stated that "In the dispositional phase, facts are sufficient" to support these services.

Both parents appealed the dependency and disposition orders. On July 6, 2020, after more than six months of in-home dependency and the parents' successful completion of services, the court granted the Department's motion to dismiss the dependency matters as to both children.

## ANALYSIS

I. Standard of Review

Parents have a fundamental liberty interest in the care and welfare of their minor children. In re Dependency of Schermer, 161 Wn.2d 927, 941, 169 P.3d 452 (2007). The State has a corresponding interest to intervene to protect children from serious parental deficiencies. Lee v. State of Wash., Dept. of Soc. and Health Servs., 189 Wn. App. 381, 396, 357 P.3d 68 (2015). Unless a child's right to conditions of basic nurture, physical and mental health, or safety is jeopardized, "the family unit should remain intact." RCW 13.34.020. In balancing the legal rights of parents against the rights of the child, the legislature has determined that "the child's health and safety shall be the paramount concern." Id.; Schermer, 161 Wn.2d at 942.

Unlike a parental termination proceeding, a dependency hearing is "'a preliminary, remedial, nonadversary proceeding' that does not permanently deprive a parent of any rights." In re Welfare of Key, 119 Wn.2d 600, 609, 836 P.2d 200 (1992) (quoting In re Dependency of A.W., 53 Wn. App. 22, 30, 765 P.2d

307 (1988)). The primary purpose of a dependency hearing "is to allow courts to order remedial measures to preserve and mend family ties." In re Dependency of T.L.G., 126 Wn. App. 181, 203, 108 P.3d 156 (2005)). To declare a child dependent, the State must prove by a preponderance of the evidence that the child meets one of the statutory definitions of dependency under RCW 13.34.030(6). RCW 13.34.110(1); Key, 119 Wn.2d at 612.

We will affirm a dependency determination if substantial evidence supports the trial court's findings of fact and the findings, in turn, support the conclusions of law. In re Dependency of M.S.D., 144 Wn. App. 468, 478, 182 P.3d 978 (2008). "Substantial evidence exists if, when viewing the evidence in the light most favorable to the prevailing party, a rational trier of fact could find the fact more likely than not to be true." In re Welfare of X.T., 174 Wn. App. 733, 737, 300 P.3d 824 (2013). In making this determination, this court does not weigh the evidence or the credibility of witnesses. In re Dependency of M.P., 76 Wn. App. 87, 91, 882 P.2d 1180 (1994).

We review the juvenile court's decision to order a particular service for abuse of discretion. In re Dependency of D.C.-M., 162 Wn. App. 149, 158, 253 P.3d 112 (2011). A court abuses its discretion if the decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Dependency of T.L.G., 139 Wn. App. 1, 15, 156 P.3d 222 (2007).

II.     Mootness

As an initial matter, the Department asks this court to dismiss the appeal as moot because the trial court dismissed the dependency at the end of the six-month

dependency period. A case is moot and should be dismissed if the court can no longer provide effective relief. State v. T.S.J.-M., 193 Wn.2d 450, 454, 441 P.3d 1181 (2019). We agree with the parents' assertion that their appeal is not moot because the court's finding that the children were dependent under RCW 13.34.030(6)(c) could influence any future dependency case the Department may initiate. See In re Welfare of Angelo H., 124 Wn. App. 578, 587, 102 P.3d 822 (2004) (stating that services offered in prior dependencies are properly considered as factual evidence in a current dependency).

In addition, we may review an otherwise moot case that presents an issue of continuing and substantial public importance. In re Dependency of T.P., 12 Wn. App. 2d 538, 545, 458 P.3d 825 (2020). To make this determination, we consider whether "'(1) the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur.'" Id., (quoting In re Marriage of Horner, 151 Wn.2d 884, 892, 93 P.3d 124 (2004)). The Department argues that the public interest exception does not apply because the appeal presents a highly fact-specific issue that is unlikely to recur. But there is a strong public interest in ensuring that courts properly apply the law and act within their authority in making dependency determinations. There is also a strong public interest in offering guidance to the Department as to what sort of facts may or may not be deemed sufficient as it weighs the critical decision of whether to proceed with dependency proceedings in each case. We will therefore consider the parents' appeal.

III.     Dependency Finding

Both parents challenge the dependency court's finding that the Department proved by a preponderance of the evidence that the children were dependent under RCW 13.34.030(6)(c), which provides that a child is dependent when the child "[h]as no parent . . . capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development."  The trial court's finding was based on three categories of parental deficiencies: (1) failure to provide clean and sanitary housing, (2) failure to meet the children's medical, dental, and scholastic needs, and (3) chaos in the children's lives caused by the father's ongoing criminal activity in the home.  We agree that insufficient evidence supported the bases for the court's dependency finding.

A.     Conditions of the Home

The parents do not dispute that substantial evidence demonstrates that the residence was unsafe and unsanitary for children when police searched it on June 18, 2019.  Police testimony and photographic evidence showed that on that date, the apartment was strewn with piles of clothes, bicycle parts, rotting food, and hazards such as knives, a pellet gun, and cigarette butts floating in the bathtub.  But both parents testified that the children were staying with their grandmother at that time.  Although one of the officers noted some untidiness during the April 2019 visit, he testified that it was much worse in June when the children were not there.[4]

---

[4] Although the court recalled that Douglas observed rotting food, bad odors, and fruit flies during the April 2019 visit, he testified that he made those observations during the June 2019 visit.

In contrast, the most recent evidence showed that the parents had remedied those conditions prior to the dependency trial. The GAL testified that when she visited the home in September 2019, it was reasonably clean, with no dangerous or unsanitary conditions. And Jennifer Maza, case manager for the Opportunity Council, also testified that she had no cleanliness concerns when she visited in September 2019.

The Department argues that there was no evidence the September 2019 improvement was a lasting change or that the parents understood the safety concerns of the condition of the home on June 18. But when read in context, the parents' testimony indicates that their perception of safety concerns appropriately differed when the children were not at home. The Department bears the burden of proving that a child is presently dependent at the time of the dependency trial. RCW 13.34.110(1). The evidence showed that the conditions in June 2019 no longer existed in September 2019. And there is no evidence that the parents had previously allowed the home to deteriorate to that extent when the children were present. Thus, the court erred in relying on the condition of the home in June 2019 as a basis for dependency.

### B.     Medical and Dental Checkups

The parents acknowledge that the evidence showed they did not take the children for regular medical or dental checkups. They argue, however, that the court erred in finding the children dependent on this basis because there was no admissible evidence that this placed them at a genuine risk of specific harm. A dependency determination under RCW 13.34.030(6)(c) does not require proof of

actual harm, only a danger of harm. <u>Schermer</u>, 161 Wn.2d at 951. The court has broad discretion in determining whether there is a risk of harm. <u>Id.</u> Here, the only nonspeculative risk of harm regarding the children's health was testimony that they had dental cavities. However, the court ruled this hearsay testimony inadmissible to show that the children had cavities, and the Department does not argue that it did so in error. Although Department social worker Michelle Vandenhaak testified that she was concerned about "critical dental care," there was no expert testimony or other evidence supporting the basis of her concern. Further, there was no other evidence that the children appeared ill or otherwise in need of medical care. Substantial evidence did not support this finding.

### C. Scholastic Needs

Both parents argue that the court erred in finding them to be inadequate parents for failing to compel D.K.H. to go to school. They contend that this finding runs contrary to Washington's compulsory education statute.

The trial court faulted the parents for choosing to remove D.K.H. from school after she was assessed and recommended to be on an Individualized Education Plan (IEP), despite the fact that she was younger than six years old at the time. The court stated that this decision "demonstrates an ignorance about child development and an inability to provide adequately for the children." But only children eight years and above must attend school in Washington. RCW 28A.225.010(1). If a six or seven-year old child is enrolled in public school, the child must attend "for the full time that school is in session." RCW 28A.225.015(1). A child younger than six years of age is not subject to that requirement. This

represents the Legislature's determination that education is not so vital to the development of a child younger than six years of age as to be compulsory. Thus, we agree that the court erred in relying on D.K.H.'s removal from school as a basis for dependency.

Based on her age when her parents enrolled her in school, I.R.M. was required by statute to continue attending throughout the school year. RCW 28A.225.015(1). Chapter 28A.225 RCW empowers schools to enforce attendance via truancy proceedings. On this basis, the mother asserts that granting the Department's dependency petition based on I.R.M.'s school attendance usurped the school district's role in truancy proceedings. We disagree. Finding the children dependent on this basis does not compel them to attend school. Rather, such a finding authorizes the Department to provide services to remedy the parental deficiency. The court did not err on this basis. However, the mother testified at trial that both girls were enrolled in school and that they would remain in school. Thus, the court erred in finding I.R.M. dependent on this basis at the time of trial. RCW 13.34.110(1).

D.     Father's Criminal Justice System Involvement

The only remaining parenting deficiency expressed by the court was father's ongoing involvement in the criminal justice system. The court may consider a parent's criminal behavior and history in evaluating parental fitness, as it may negatively impact the welfare of the child. In re Dependency of J.B.S., 123 Wn.2d 1, 11-12, 863 P.2d 1344 (1993). The father acknowledges that he had several pending criminal charges at the time of the dependency trial. He does not dispute

12

that the criminal activity in the home may impact the girls or that his absences negatively impact his ability to parent. Rather, he contends that the court erred in relying on his criminal history as a basis for finding the girls dependent because the mother could adequately care for them during his absence.

"A child is not dependent if a capable parent exists." In re Welfare of Ca.R., 191 Wn. App. 601, 608, 365 P.3d 186 (2015). In its oral ruling, the court stated that the mother's ability to care for the children appears to be limited when the father is incarcerated. However, the court also specified that lack of supervision was not a concern. And the mother testified that she seeks help from relatives during the father's frequent, yet typically brief, periods of incarceration. Although there is substantial evidence that the father's arrests and incarceration negatively impact the children, the evidence is insufficient to establish that there is "no parent . . . capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." RCW 13.34.030(6)(c).

IV.     Services

Both parents argue that the court lacked authority to order them to undergo random urinalysis and substance abuse evaluations because the court found no parental deficiencies related to drug use and there was no credible evidence to support the need for those services as part of the disposition. The mother similarly argues that the court lacked authority to order her to undergo a mental health assessment. The Department properly concedes that the trial court erred in ordering these services.

"The dependency statutes provide a broad framework from which the juvenile court may order services to facilitate parent-child reunification." D.C.-M., 162 Wn. App. at 158. The court is authorized to order the provision of services only "for the specific purpose of making reasonable efforts to remedy parental deficiencies identified in a dependency proceeding under this chapter." RCW 13.34.025(2)(d). Where the evidence is insufficient to show that a parent has an issue that requires remedying as a parental deficiency, a juvenile court abuses its discretion by ordering services related to that issue. In re Dependency of W.W.S., 14 Wn. App. 2d 342, 364-65, 469 P.3d 1190 (2020).

Here, the only identified parenting deficiencies for both parents were "failure to provide safe and sanitary housing" and "failure to provide for [I.R.M. and D.K.H.'s] medical and scholastic needs," plus "ongoing criminality" with respect to the father. Random urinalysis, substance abuse evaluation, and mental health evaluation are entirely unrelated to those identified parenting deficiencies.

Moreover, even if the court had found parenting deficiencies based on drug use or mental health, the Department did not present sufficient evidence to support them. Although the rules of evidence do not apply at a dispositional hearing in juvenile court, due process requires that the disposition be based on reliable evidence. W.W.S., 14 Wn. App. 2d at 366.

The only non hearsay evidence regarding possible drug use came from the apartment manager, who testified that the parents' behavior sometimes seemed "off" to her, although she could not say whether drug use was the reason. Department social worker Vandenhaak offered hearsay testimony that unnamed

14

friends and family members told her the parents had substance abuse problems. Although police officers testified that they observed no evidence of substance use in the apartment, Vandenhaak requested urinalysis "just to rule out any allegations of drug use." The court agreed, and ordered the parents to undergo urinalysis to "demonstrate sobriety." Such reasoning "would justify subjecting any parent to urinalysis regardless of whether there was evidence of drug use." Id. at 365 (emphasis omitted). This was an abuse of discretion.

Similarly, the only evidence the Department presented regarding the mother's mental health was Vandenhaak's testimony that the mother seemed depressed and had missed two visits with the children. The court ordered a mental health evaluation to "help her [ ] be a better parent to her children." But there was no evidence or testimony that the mother's mental health affected her ability to parent, neither had the Department alleged any underlying mental health issues as to the mother. This too was an abuse of discretion.

The mother additionally asserts that the random urinalysis requirement and the requirement to "[a]llow announced and unannounced visits to the home" violate her privacy rights without authority of law under Article I, section 7 of the Washington State Constitution. "If it is not necessary to reach a constitutional question, it is well established policy that we should decline to do so." State v. Speaks, 119 Wn.2d 204, 207, 829 P.2d 1096 (1992); W.W.S., 14 Wn. App. 2d at 366, n. 10. Because we accept the Department's concession that the court abused its discretion by ordering the parents to submit to random urinalysis, we need not address the mother's constitutional challenge to that requirement.

We also decline to address her constitutional challenge to the home visit requirement, which was raised for the first time on appeal. The general rule is that a party's failure to raise an issue below waives the issue on appeal unless the party can show the presence of a manifest error affecting a constitutional right. RAP 2.5(a)(3). Unlike the dependency finding, the imposition of this requirement carries no collateral consequences. Because the issue is technically moot and was raised for the first time on appeal, we decline to reach it, regardless of whether the error was manifest.

Reversed.

ORDERED that the names of the parents be removed from the opinion; and it is further

ORDERED that a substitute unpublished opinion shall be filed.

_____

_____          Mann, C.J.